C. H. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 28047-81.
United States Tax Court
T.C. Memo 1986-224; 1986 Tax Ct. Memo LEXIS 382; 51 T.C.M. (CCH) 1114; T.C.M. (RIA) 86224; June 4, 1986. Leslie Shields, for the petitioner. Cynthia M. Odle-Schlechty, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined a deficiency of $49,596.72 in petitioner's Federal income taxes for 1977. The issue for decision is whether petitioner's contribution of property to the Oliver Springs Lions Club and Sight and Hearing Center, Inc. entitles him to claim a deduction under section 170. [1]
*387 This case has been submitted fully stipulated pursuant to Rule 122(a). [2] The evidence consists of a stipulation of facts with attached exhibits which is incorporated herein by this reference. Petitioner, C. H. Smith, was a resident of Oliver Springs, Tennessee at the time he filed the petition in this case. Petitioner filed his individual income tax return for 1977 with the Director, Memphis Service Center, Memphis, Tennessee. During 1977, petitioner was stockholder, president, and employee of Oliver Springs Mining Company. Petitioner was very active in business and community affairs in and around Oliver Springs and was a member of the Oliver Springs Lions Club. The Oliver Springs Lions Club (hereinafter the Club) leased a building for its meetings and activities. However, sometime prior to 1977, the Club was forced to seek other facilities because the lease was due to expire. In response to that need, petitioner sought to buy a piece of property for the sole purpose of contributing it to the Club. A suitable piece of property *388 was located. The owner of the property, Mrs. E. C. Foster, was unwilling to sell unless the property would be used for charitable purposes. In 1976, petitioner purchased the property after assuring Mrs. Foster that the property would be used for charitable purposes.Petitioner then built a swimming pool and clubhouse on the property. In anticipation of owning real estate, the club, on the advice of a local attorney, decided to incorporate for the purpose of protecting its members from liability should someone be injured on the property. The Club formed a not-for-profit corporation under the laws of the state of Tennessee on August 5, 1977. The corporation was named the Oliver Springs Lions Club, Inc. Shortly thereafter, by an amendment to the corporate charter the name of the corporation was changed to the Oliver Springs Lions Club and Sight and Hearing Center, Inc. The amendment also changed the purposes for which the corporation was organized and listed them as follows: To provide facilities for examination of eye and ear diseases, and to promote care, and treatment of eye and ear problems, and to promote activities for the blind and the deaf of the community, and to seek *389 and obtain donors to eye bank, and to engage in such charitable activities as the TRUSTEES deem fit, and to promote the Corporation in the Oliver Springs area. On December 28, 1977, petitioner transferred the property to the Oliver Springs Lions Club Sight and Hearing Center, Inc. [3] with the following provision in the deed: In the event that the Oliver Springs Lions Club and Sight and Hearing Center, Inc. should ever cease to function for its stated purpose, or any other charitable and civic purpose, then the title to the above property will be divested out of the Oliver Springs Lion Club and Sight and Hearing Center, Inc., and will be vested in the Beach Park Missionary Baptist Church. The Oliver Springs Lions Club is a subordinate of the International Association of Lions Clubs and has thereby qualified as a section 501(c)(4) organization by group exemption letter. However, at no time before or after the incorporation of the Oliver Springs Lion Club and Sight and Hearing Center, Inc. was *390 the Commissioner of the Internal Revenue notified of any change of name, form, character, purpose, or method of operation of the Oliver Springs Lions Club. No application for exempt status was ever filed during 1977, or thereafter, in the name of the Oliver Springs Lions Club, Inc., the Oliver Springs Lions Club Sight and Hearing Center, Inc., nor the Oliver Springs Lions Club and Sight and Hearing Center, Inc. Petitioner concedes that the property transferred is capital gain property and that if it is otherwise a deductible charitable contribution, the deduction is limited to $76,397 in 1977. Section 170(b)(1)(C). Petitioner further concedes that the Oliver Springs Lions Club and Sight and Hearing Center, Inc. was not a qualified organization for purposes of section 170. Section 170 generally provides a deduction for contributions to charitable organizations. [4] However, section 170(f)(1) disallows a charitable deduction if the donee organization fails to satisfy certain filing requirements for tax-exempt status. [5] The regulations provide that a charitable organization must file a notice, described in section 508(a), within 15 months of the end of the month within which it *391 is organized to qualify as an exempt organization from its beginning. Section 1.508-1(a)(2)(i), Income Tax Regs. The Oliver Springs Lions Club and Sight and Hearing Center, Inc. has never filed such an application. *392 The Oliver Springs Lions Club was an unincorporated subordinate of the International Association of Lions Clubs and qualified as a section 501(c)(4) exempt organization under that association's group exemption letter. [6] Upon incorporation, however, the Oliver Springs Lions Club and Sight and Hearing Center, Inc. became a separate entity for purposes of the tax laws. Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943). As such, the center was not covered by the International Association's group exemption letter.[7] Respondent also correctly points out that although an organization may be exempt from income taxation under section 501(c)(4), contributions to such an organization are not deductible under section 170. [8]Regan v. Taxation with Representation of Wash.,461 U.S. 540, 543 (1983); Alexander v. "Americans United" Inc.,416 U.S. 752, 755 (1974). *393 Conceding the above, petitioner contends that the language of the deed of transfer and the references therein created a charitable trust which qualifies under section 4947(a)(1). Petitioner further contends that a section 4947(a)(1) charitable trust is not subject to the 15 months' notice requirement of the regulations and is not required to have tax exempt status under section 501(c)(3) in order to be a qualified organization for purposes of section 170. Petitioner concludes that because the requirements of section 53.4947-1(b), Excise Tax Regs., and section 170(c)(2)(B) were satisfied by the charitable trust, the transfer of the property qualified as a deductible charitable contribution. Conversely, respondent contends that this case involves merely a transfer of property by a simple deed which provided for a forfeiture in favor of another party upon the occurrence of a stated event. Respondent also contends that even if a trust had been created, section 4947 has no application to a determination under section 170 as to whether a charitable deduction will be allowed, and further, that even if section 4947 were so applicable, its requirements would not be satisfied in this *394 case. We agree with respondent that a trust was not created by the deed of transfer, and we therefore do not reach any of the other contentions. As a general proposition, "[g]rantees under deeds, wills and trusts, alike, take according to the rule of the state law." Helvering v. Stuart,317 U.S. 154, 161 (1942). A donor's disposition of property in the state of his residence is subject to its laws. By that law the character of a trust and the nature and extent of the donee's interest are to be determined. Blair v. Commissioner,300 U.S. 5, 9-10 (1937). Under the Supreme Court's holding in Commissioner v. Estate of Bosch,387 U.S. 456, 465 (1967), an interpretation of state law by the state's highest court is to be followed where the underlying substantive rule is based on that law. In this case we look to the law of the state of Tennessee, as interpreted by the Supreme Court of Tennessee, to determine whether the deed of transfer created a trust. In the case before us, the restrictions in the deed of transfer are stated in a form which is standard for the transfer of a fee simple subject to an executory interest. Burby, *395 Real Property, sec. 92, p. 209 (3d ed. 1965). Petitioner contends, however, that the language of the deed and references therein created a charitable trust. The restriction in the deed of transfer states: In the event that The Oliver Springs Lions Club and Sight and Hearing Center, Inc. should ever cease to function for its stated purpose, or any other charitable and civic purpose, then the title to the above property will be divested out of the Oliver Springs Lions Club and Sight and Hearing Center, Inc., and will be vested in the Beach Park Missionary Baptist Church. [Emphasis added.] The purpose clause in the charter of the Oliver Springs Lions Club and Sight and Hearing Center, Inc. lists its purpose as follows: To provide facilities for examination of eye and ear diseases, and to promote care, and treatment of eye and ear problems, and to promote activities for the blind and deaf of the community, and to seek and obtain donors to eye bank, and to engage in such charitable activities as the TRUSTEES deem fit, and to promote the Corporation in the Oliver Springs area. Petitioner argues that the intent to create a trust is evidenced by the fact that, under the terms *396 of the deed, the property would divest out of the Center if it ceases to function "for its stated purpose, or any other charitable and civic purpose" and that the referenced purpose clause uses the term "trustee." Tennessee law favors trusts of a charitable nature and will often uphold them in situations in which a trust of an ordinary and private nature would fail. Ratto v. Nashville Trust Co.,178 Tenn. 457, 159 S.W. 2d 88, 90 (1942). However, the Supreme Court of Tennessee has stated that: There is a broad distinction between a gift direct to a charity or charitable institutions already established, and a gift to a trustee, to be by him applied to a charity. In the first case the court has only to give the fund to the charitable institution, which is merely a ministerial or prerogative act; but in the latter case the court has jurisdiction of the trustee, as it has over all trustees, to see that he does not commit a breach of his trust, or apply the funds, in bad faith, to purposes foreign to the charity. * * * [Johnson v. Johnson,92 Tenn. 559, 23 S.W. 114, 116 (1893).] Without strong evidence that such was the intent of the donor, it *397 is unlikely that Tennessee law would characterize a deed as being a transfer in trust when on its face it appears to be a direct charitable gift. We also note that the normal result of a trustee's failure to carry out a trust is court enforcement of the trust, as opposed to a forfeiture such as is required by the deed in this case. The reference in the deed to the center's purpose is the only evidence we find potentially suggestive of an intent to create a trust. However, the deed does not specifically reference the charter's purpose clause [9] and there is no evidence that petitioner was aware that the purpose clause used the term "trustee." The form of the deed creates a presumption that it was intended to transfer a direct gift with a provision for forfeiture upon failure to use the property for the stated purposes. The evidence in this case is clearly insufficient to overcome this presumption. In conclusion, petitioner's arguments have not convinced us that the deed of transfer created a charitable trust. We accordingly hold that petitioner's contribution of property to the Oliver Springs Lions Club and Sight and Hearing *398 Center, Inc. did not entitle him to claim a deduction under section 170. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all references to authority designated by section number are to the Internal Revenue Code of 1954 as amended and in effect during 1977.↩
2. Unless otherwise indicated, all references to authority designated by rule number are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioner appears to use this name interchangeably with Oliver Springs Lions Club and Sight and Hearing Center, Inc. The deed of transfer executed by petitioner uses both names.↩
4. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) ALLOWANCE OF DEDUCTION.-- (1) GENERAL RULE.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. * * * (c) CHARITABLE CONTRIBUTION DEFINED.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provisions of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). ↩
5. Sec. 170(f) provides: (f) DISALLOWANCE OF DEDUCTION IN CERTAIN CASES AND SPECIAL RULES.-- (1) IN GENERAL.--No deduction shall be allowed under this section for a contribution to or for the use of an organization or trust described in section 508(d) or 4948(c)(4) subject to the conditions specified in such sections. Sec. 508(d) provides: (d) DISALLOWANCE OF CERTAIN CHARITABLE, ETC., DEDUCTIONS.-- * * * (2) GIFT OR BEQUEST TO TAXABLE PRIVATE FOUNDATION, SECTION 4947 TRUST, ETC.--No gift or bequest made to an organization shall be allowed as a deduction under section 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2106(a)(2), or 2522, if such gift or bequest is made-- * * * (B) to any organization in a period for which it is not treated as an organization described in section 501(c)(3) by reason of subsection (a). Sec. 508(a) provides: (a) NEW ORGANIZATIONS MUST NOTIFY SECRETARY THAT THEY ARE APPLYING FOR RECOGNITION OF SECTION 501(c)(3) STATUS.--Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)-- (1) unless it has given notice to the Secretary, in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or (2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.↩
6. 26 C.F.R. sec. 601.201 (1977) provides, in part: RULINGS AND DETERMINATIONS LETTERS. * * * (n) ORGANIZATION CLAIMING EXEMPTION UNDER SECTION 501 or 521 OF THE CODE * * * (7) Group exemption letters--(i) General. (a) A group exemption letter is a ruling issued to a central organization recognizing on a group basis the exemption under section 501(c) of the Code of subordinate organizations on whose behalf the central organization has applied for exemption in accordance with this subparagraph. (b) A central organization is an organization which has one or more subordinates under its general supervision or control. (c) A subordinate is a chapter, local, post, or unit of a central organization. It may or may not be incorporated. A central organization may be subordinate itself, such as a state organization which has subordinate units and is itself affiliated with a national organization. (d) A subordinate included in a group exemption letter should not apply separately for an exemption letter, unless it no longer wants to be included in the group exemption letter. ↩
7. A group exemption letter only covers subordinates that are in existence at the time of its issuance. The Oliver Springs Lions Club and Sight and Hearing Center, Inc., being a new and separate entity, cannot, therefore, claim to be covered by the group exemption letter. ↩
8. Much of the language of sec. 170(c)(2) parallels language used in sec. 501(c)(3): SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) EXEMPTION FROM TAXATION.--An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. * * * (c) LIST OF EXEMPT ORGANIZATIONS.--The following organizations are referred to in subsection (a): * * * (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. (4) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes. Sec. 501(c)(4) organizations include organizations involved in civic non-charitable activities. Sec. 501(c)(3) organizations include only charitable organizations.↩
9. The deed refers to the Center's "stated purpose."↩